IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDY SUE SCANNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. 15-80 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Wendy Sue Scannell ("Scannell") filed an application for supplemental security income on August 3, 2011, alleging an inability to work beginning on December 31, 2002. (R. 23) Scannell bases her claim of disability on obesity, osteoarthritis, sleep apnea and depression. (R. 25) The claim was denied initially on October 26, 2012. (R. 23) Scannell's subsequent request for a hearing was granted and the Administrative Law Judge ("ALJ") conducted a hearing on October 17, 2013. (R. 23) A vocational expert ("VE") appeared and testified. The ALJ then issued an unfavorable decision. (R. 20-32) The Appeals Council subsequently denied Erie's request for review. (R. 1-3) She then appealed to this Court.

Before the Court are Cross-Motions for Summary Judgment. *See* ECF Docket Nos. [11] and [13]. Both parties have filed Briefs in Support of their positions. *See* ECF Docket Nos. [12], [14] After careful consideration of the submissions of the parties, and

1

based on my Opinion set forth below, the ALJ's decision is affirmed.

I. **BACKGROUND**

Scannell was born on February 14, 1968, making her 44 years old at the time she filed her application. (R. 30) She turned 45 by the time the ALJ issued his decision and is characterized as a "younger individual age 45-49." (R. 30) 20 C.F.R. § 416.963. She left school after the tenth grade. (R. 40) She does not drive and has never had a driver's license. (R. 49) Her past job experience includes working as a cashier and coffee packer. (R. 40-41) Scannell explained that she left her past jobs because of her medical problems. Scannell relies upon her daughter to help her with activities of daily living such as bathing, meal preparation and household chores. (R. 47-48)

As stated above, the ALJ concluded that Scannell has not been under a disability within the meaning of the Social Security Act since August 2, 2012, the application date. (R. 25) Specifically, the ALJ determined that Scannell suffered from the following severe impairments: obesity, osteoarthritis, sleep apnea and depression. (R. 25) Nevertheless he concluded that those impairments or combination of impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. 416.920(d), 416.925 and 416.926. (R. 25-27) The ALJ further concluded that Scannell had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with certain limitations. (R. 27-30) Ultimately, the ALJ concluded that, given Scannell's age, education, work experience, and residual functional capacity, there were jobs, such as an assembler, an alarm monitor, and a document preparer, that existed in significant numbers in the national economy that Scannell could perform. (R. 31) Consequently, the ALJ denied her claim.

2

Scannell takes issue with the ALJ's assessment of the medical evidence. More specifically, Scannell urges that the ALJ improperly rejected her treating physician Dr. Spahn's opinion without an adequate basis, and without any contrary medical evidence. According to Scannell, the ALJ should have afforded Spahn's opinion greater weight. I disagree and find that the ALJ accorded Dr. Spahn's opinion the appropriate amount of weight.

## II. LEGAL ANALYSIS

### A) Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he

cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P. appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B)    Discussion**

4

As stated above, Scannell challenges the ALJ's findings. Specifically, she disagrees with the ALJ's treatment of Dr. Spahn's opinion. For the reasons set forth below, I find Scannell's challenge unpersuasive.

Dr. Spahn is Scannell's primary care physician. Scannell urges that, because Spahn is the treating physician, his opinion is entitled to the greatest weight and that the ALJ failed to follow this dictate. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to that of a non-examining source. 20 C.F.R. § 416.927(c)(1). Additionally, the ALJ generally will give more weight to opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from the reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* If a treating physician's opinion is not given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. 20 C.F.R. § 416.927(c)(1)-(6). "[T]he more consistent an opinion is

5

with the record as a whole, the more weight [the ALJ generally] will give to that opinion." 20 C.F.R. § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(c)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Social Sec.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 416.927(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating, "[o]pinions on disability are not medical opinions and are not given any special significance."). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent,

relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-4 (3d Cir. 2008).

As stated above, Dr. Spahn acted as Scannell's treating physician. He completed a Medical Source Statement on September 8, 2013. (R. 409-412) As part of that statement, Dr. Spahn indicated that during an 8-hour workday, Scannell could occasionally lift / carry ten pounds, and could frequently lift / carry less than ten pounds. (R. 410) Spahn also commented that Scannell could stand / walk only two hours in an 8-hour workday and would likely miss or be otherwise unable to complete a full workday three days a week. (R. 412) Further, he stated that Scannell would require between 5-8 breaks in excess of 5-10 minutes each workday (R. 412) He also noted that Scannell could never engage in the following postural activities during a workday: climbing, balancing, kneeling, crouching, crawling, and / or stooping. (R. 412) Dr. Spahn did not detail any visual, communicative, environmental or manipulative limitations upon Scannell based upon her impairments. (R. 411-412) Significantly, Dr. Spahn left blank each section of the form that asked for medical / clinical findings that supported his conclusions. Dr. Spahn also completed an Employability Assessment form dated October 11, 2012. (R. 406-407) As part of that form Dr. Spahn indicated that Scannell was temporarily disabled due to her knee, from a period beginning April 1, 2011 through a period expecting to last through at least April 1, 2013. (R. 406-407)

The ALJ accepted some of Dr. Spahn's findings but rejected others. Specifically he found that Spahn's "opinion with regard to the claimant's ability to lift and carry is supported by the evidence, but that the remainder of the opinion is not." (R. 30) He continued, stating that, "[t]he medical evidence does not show pain complaints of a

7

frequency or severity that would preclude her from maintaining regular attendance, and the physical examination findings and medical imaging do not reflect an impairment that completely precludes climbing, balancing, kneeling, crouching, crawling, or stooping." (R. 30) Scannell disagrees, urging that the record contains x-rays, exams and her own testimony that support Dr. Spahn's conclusions, including his conclusions about Scannell's need to take days off and breaks. After careful consideration, I find that the ALJ accorded Dr. Spahn's conclusions appropriate weight.

Simply put, the record in this case shows that Spahn treated Scannell conservatively with nothing more than medication and a referral for physical therapy which Scannell never followed up on. The record is devoid of any physical therapy treatment notations. Nor, despite Scannell's claims of debilitating pain, did Spahn ever send her to a pain management or orthopedic specialist. Scannell's medical records consist largely of requests for refills of pain medication or for other unrelated reasons. Further, there are few diagnostic results but those support the ALJ's conclusions that Scannell is capable of sedentary work. For instance, an exam of Scannell's knee in March of 2006 indicated "very minimal degenerative osteoarthritic changes involving the right knee," with "normal" joint spaces." (R. 239) A February of 2007 exam revealed "[m]inimal osteoarthritic changes … within the lateral compartment and mild osteoarthritic changes … within the medial compartment." (R. 237) "No lytic or sclerotic bony lesions" were noted and the soft tissues were deemed to be "otherwise unremarkable." (R. 237) A February of 2008 exam for pain in the lumbar spine indicated a "transitional L5 vertebral body" and "[d]egenerative disc space narrowing" at L5/S1 but no evidence of an acute lumbar compression fracture. (R. 293) In May of

2013, Scannell presented again with a complaint of severe back pain. The "past history" indicated that Scannell had previously been diagnosed with a herniated disc and transitional L5 vertebra. (R. 388) A comparison with prior x-rays revealed no changes. (R. 388) The findings were recorded as a "narrowing of the L5-S1 disc space." Scannell was found to have a normal alignment of the bones of the lumbar spine and no fractures or lytic lesions were identified. Although a transitional vertebra was noted at L5 and heavy calcifications were seen in the abdominal aorta, "[n]o acute disease [was] seen." (R. 390) She was given pain medication and discharged. In short, Spahn's records do not detail any debilitating conditions.

John Nesbitt, M.D., a consultative examiner, examined Scannell in October of 2012. He did not find Scannell to suffer from any debilitating conditions which precluded work. For instance, Nesbitt did not find Scannell to have any range of motion limitations with respect to her neck or upper extremities. (R. 356) He further noted that her legs were free from edema, that her gait was normal and that Scannell experienced back pain at about 45 degrees on a straight leg test of her left leg and both hip and back pain at about 30 degrees on a straight leg test of her right leg. (R. 357) His impression was that Scannell suffered from, in part, joint pain and "[c]hronic back pain with suspicion about the L5-S1 disc possibly of some sciatica related to that on the right leg." (R. 357) Dr. Nesbitt completed a Medical Source Statement, opining that Scannell was capable of lifting and carrying 20 pounds frequently and 25 pounds occasionally. (R. 359) He indicated that she could stand / walk 4 hours in an 8-hour workday and had no restrictions with respect to sitting or pushing / pulling (R. 359) He further reported that Scannell could bend, stoop and balance frequently and could kneel, crouch and climb

9

occasionally. (R. 359) He did not preclude her entirely from any postural activities.

The ALJ's conclusions are also supported by the opinion of Dr. Ali, a state agency physician. Dr. Ali reviewed Scannell's application in October 2012 as well as all of the relevant medical records. (R. 65-68) Dr. Ali found Dr. Nesbitt's report to be "well supported by the medical evidence." (R. 68) Ultimately, Dr. Ali concluded that Scannell would be able to perform sedentary work. (R. 69)

Thus, contrary to Scannell's assertions, the ALJ's conclusions are supported by substantial evidence of record. Consequently, the weight he gave Dr. Spahn's opinion was entirely appropriate. As such, the ALJ's decision to give it "little weight" was wholly appropriate. The ALJ's decision is affirmed on this ground.

## III. **CONCLUSION**

After a thorough review of the record and careful consideration of Scannell's arguments, I find that the decision rendered below is supported by substantial evidence of record. Accordingly, the decision is affirmed.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WENDY SUE SCANNEL,  )
 )
    Plaintiff,  )
 )
-vs-  )  Civil Action No. 15-80
 )
CAROLYN W. COLVIN,  )
COMMISSIONER OF SOCIAL SECURITY,  )
 )
    Defendant.  )

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 19th day of November, 2015, it is ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 11) is denied and the Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED.

It is further ordered that the decision of the Commissioner of Social Security is hereby affirmed.

                                              BY THE COURT:

                                              /s/ Donetta W. Ambrose
                                              Donetta W. Ambrose
                                              United States Senior District Judge